UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| CHRIS FRICKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: |
| | ) |
| PSA AIRLINES, INC. & AIR LINE | ) |
| PILOTS ASSOCIATION, INT'L, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I. N**ATURE OF THE **C**ASE

1. This is a hybrid action brought by Plaintiff, Chris Fricke ("Fricke"), by counsel, against Defendants, PSA Airlines, Inc. ("PSA") & the Air Line Pilots Association, Int'l ("ALPA")(collectively, "Defendants"), for violating the Railway Labor Act, 45 U.S.C. §151 et seq.

**II. P**ARTIES

2. Fricke is a resident of the United States and the State of Indiana.

3. Defendant PSA is a corporation that conducts business in the Southern District of Indiana.

4. Defendant ALPA is a Union that represents individuals and conducts business in the Southern District of Indiana.

**III. J**URISDICTION AND **V**ENUE

1

5. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331 and 45 U.S.C. §151 et seq.

6. Fricke exhausted his administrative remedies by timely filing a grievance with ALPA and proceeding to the end of the underlying grievance process.

7. A substantial part of the events, transactions, and occurrences concerning this case arose in the geographical environs of the Southern District of Indiana; therefore, venue is proper in this Court.

## IV. FACTUAL ALLEGATIONS

8. Fricke is a Pilot and worked for PSA since in or around December 2014. At all times relevant, he met or exceeded Defendant's legitimate performance expectations. PSA Pilots are members of a Union, "The Airline Pilots in the service of PSA Airlines, Inc. as represented by the Air Line Pilots Association, International."

9. PSA is a wholly owned subsidiary of American Airlines ("American"), and as part of an agreement between the two, each month, American takes ten of the most senior pilots from PSA for employment with American. Fricke was selected to move to American on June 17, 2022, and he began employment with American on or about August 17, 2022 where he began a period of new hire training.

10. Commensurate with beginning employment with American, Fricke was placed on a personal leave of absence with PSA in accordance with the Letter of Agreement ("LOA") No. 5. As noted in LOA 5, Section 1.c., "such personal leave will end upon the completion or termination of initial new hire training at American."

11. Further, Section 13 of ALPA's Collective Bargaining Agreement allows for a personal leave of up to six months and states that "when such leave is granted, the pilot shall retain but not accrue longevity and will retain and accrue seniority during the personal leave." Section 13 also states that a pilot on personal leave must give the company 15 days' notice before the expiration of the leave with his intention to return to active status, request leave extension, or resign.

12. Per Section 13 of the CBA, Fricke's six-month leave would expire on February 16, 2023, and according to LOA 5, his leave was to expire upon completion of training with American, which occurred on February 8, 2023.

13. On or about November 21, 2022 – well in advance of completing his training and well in advance of the six-month time frame for a leave of absence, Fricke inquired with Lucas Bowden about returning to PSA. Then, on December 2, 2022, he specifically made a request to Bowden and Michael Howe (ALPA rep) to return to PSA.

14. Bowden assured Fricke he was looking into the matter and as of December 30, 2022, Bowden informed Fricke that Mr. Steve Nigh and Keith Stamper, counsel for PSA, agreed that the contract could allow him to return to PSA and that they were in contact with American about this issue. Fricke continued in his training with American at the time but remained in constant contact with Bowden about his return to PSA.

15. On February 8, 2023, Fricke informed Bowden that he had corresponded with Curt Ebbert who said that if PSA and American gave permission, the Union would

not stand in the way of his return. Bowden's response implied that Fricke would be allowed to return, as he discussed the possibility of repayment of a flow bonus and discussion of Fricke's eligibility to apply for a LCA spot.

16. Despite this, and despite having requested to return to PSA well before completing his training with American, on February 10, Bowden informed Fricke that because he had completed his training with American, he could not return to PSA with his seniority.

17. Fricke then filed a grievance with ALPA following the decision and on May 9, 2023, the Union arbitrarily denied the grievance stating that the request to return was "not based on failing initial training" and therefore did not meet the intent of LOA 5.1.c and d. Upon information and belief, ALPA and PSA colluded to deny Fricke's grievance.

18. ALPA breached its duty of fair representation by arbitrarily denying Fricke's grievance and operating in bad faith. Further, PSA breached the CBA and/or LOA by failing to return Fricke to his position with seniority.

## V. LEGAL ALLEGATIONS

### COUNT I: BREACH OF CBA BY PSA

19. Paragraphs one (1) through eighteen (18) of Fricke's Complaint are hereby incorporated.

20. Defendant PSA breached the Collective Bargaining Agreement by failing to return Fricke to his position with corresponding seniority.

21. Fricke has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

### COUNT II: BREACH OF DUTY OF FAIR REPRESENTATION BY ALPA

22. Paragraphs one (1) through twenty-one (21) of Fricke's Complaint are hereby incorporated.

24. Defendant PSA breached the CBA by failing to return Fricke to his position with corresponding seniority.

25. ALPA handled Fricke's resulting grievance in an arbitrary fashion and denied his grievance in bad faith.

26. Fricke has suffered and continues to suffer harm as a result of Defendant ALPA's unlawful actions.

### VI. REQUESTED RELIEF

WHEREFORE, Plaintiff, Chris Fricke, by counsel, respectfully requests that this Court find for Plaintiff and:

1. Reinstate Plaintiff to the position, salary and seniority level with PSA he would have enjoyed but for Defendant's unlawful employment actions, and/or award him front pay in lieu thereof;

2. Pay Plaintiff's lost wages and benefits;

3. Pay to Plaintiff compensatory damages, damages for emotional distress and payment of uncovered medical bills and/or insurance premiums;

4. Pay to Plaintiff punitive damages;

5.  Pay to Plaintiff pre- and post-judgment interest;

6.  Pay Plaintiff's costs and attorney fees incurred in litigating this action; and,

7.  Provide any further equitable relief this Court sees fit to grant.

    Respectfully submitted

    /s/ Lauren E. Berger
    Lauren E. Berger, Atty. No. 29826-19
    BIESECKER DUTKANYCH & MACER, LLC
    411 Main Street
    Evansville, IN 47708
    Telephone:  (812) 424-1000
    Facsimile:  (812) 424-1005
    Email:  lberger@bdlegal.com

*Attorneys for Plaintiff, Chris Fricke*

**DEMAND FOR JURY TRIAL**

The Plaintiff, Chris Fricke, by counsel, respectfully requests a jury trial for all issues deemed triable by jury.

Respectfully submitted,

/s/ Lauren E. Berger
Lauren E. Berger, Atty. No. 29826-19
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, IN 47708
Telephone:   (812) 424-1000
Facsimile:    (812) 424-1005
Email:          lberger@bdlegal.com

*Attorneys for Plaintiff, Chris Fricke*